MaddeN, Judge,
delivered the opinion of the court:
The case of Major George C. Hunt, considered herein, is *21 a test case to determine the rights of himself and the twelve other plaintiffs. By stipulation of the parties, the cases of the other plaintiffs will be decided as Major Hunt’s case is decided. In this opinion he will be referred to as the plaintiff.
The plaintiff was one of a group of American Army, Navy, and Air Force officers who were assigned to duty with the Joint United States Military Advisory Group sent to assist the Bepublic of the Philippines. The plaintiff went to Manila in 1947, and remained there until about April 1, 1949. From October 5, 1947, to March 30, 1949, he and his dependent family occupied without charge a house in the War Damage Commission Area in Manila, which house was assigned to him by the Commanding Officer of the Advisory Group. The house was adequate for the plaintiff’s occupancy.
The plaintiff, although he occupied a house without paying for it, sues for the amount of cash rental allowance to which an officer of his rank is entitled, under the statutes, when he is not assigned adequate quarters by the Government. See Section 6 of the Act of June 16, 1942, 56 Stat. 359, 37 U. S. C. 106. The plaintiff says that he was not “assigned” quarters by the Government, because the quarters furnished him were not controlled by our Government, but by the Government of the Philippines. The basis for his argument is that the Philippines Military Assistance Act of June 26, 1946, 60 Stat. 315, 50 U. S. C., § 1861-1866, quoted in finding 3, provided for the Advisory Group of which the plaintiff became a member, and said that the members of it were authorized to accept from the Republic of the Philippines “offices and such compensation and emoluments thereunto appertaining as may be first approved by the Secretary of War or the Secretary of the Navy, as the case may be.” The Act further provided that officers, while detailed to the Advisory Group, should receive, in addition to the compensation and -emoluments allowed them by the Philippine Government, “the pay and allowances thereto entitled in” the Army, Navy or Air Corps, as the case might be.
On March 21, 1947, our Government made an agreement with the Government of the Philippines, which is quoted in part in finding 4. The agreement repeated some of the *22 provisions-of the statute. In Article 11 the agreement provided that the members of the. Advisory Group should be paid a special allowance to' compensate for increased costs of living, and that the Philippine Government should reimburse our Government for this special allowance.
Article 14 of the agreement stipulated that the Government of the Philippines should provide and defray the cost • of suitable living quarters for the members of the Advisory ■ Group and their families, and suitable buildings and office space for-the business of the group.
The house which the plaintiff occupied had been constructed by the Philippine Government and was made available to the Advisory Group pursuant to Article 14 of the agreement.
We have no doubt that the house which the plaintiff occupied and which was assigned to him by his commanding officer, was controlled by the United States sufficiently to satisfy any requirement that adequate quarters must be assigned in order to.deprive an officer of his rental allowance. We suppose that it makes no difference who owns the fee of the officer’s house. If the Government rented an apartment building, or seized such a building in occupied territory and assigned officers to apartments in it, that would deprive them of their cash rental allowance. On the other hand, if the officer and his family lived rent-free with his father-in-law, that would not.
We aré troubled, however, by the question whether the house furnished by the Philippine Government was or was not one of the emoluments which, according to the Military Assistance Act, our officers might receive from the Philippine Government, with the approval of the respective Secretaries, and still receive in addition their American pay and allowances.' If the Philippine Government had not supplied houses, but had paid cash to the officers, with the approval of the Secretaries, and if the officers had had to find their own housing, the fact that they had received enough or more than enough additional cash to pay their rent would not have deprived them of their rental allowance.
. We think, however, that the housing provided by the Philippine Government was not provided as an emolument *23 to the officers of the group, but was furnished to the United States Government as an element of compensation to it for making its military assistance available. Article 14 of the agreement provides in the same sentence for the furnishing by the Philippine Government of housing for the personnel of the group and buildings and office space for the official business of the group. In the next sentence it again links living and office quarters. And all of the rest of the article applies clearly to reimbursement to the United States Government, and not to the personnel of the group.
It will be remembered that the Military Assistance Act required that any pay or emoluments given to the American personnel had to be “first approved” by the respective Secretaries. We see no indication that the occupation, rent free, of the quarters supplied by the Philippine Government was ever considered by the Secretaries as an emolument given by the Philippine Government to the American personnel, or approved as such, either “first” or later. Indeed, the refusal of the Finance Officer of the Department of a claim of another officer made on the same basis as that of the plaintiff indicates that the Department did not so consider it.
Our conclusion is that the plaintiff George C. Hunt, having been assigned adequate quarters by the Army, was not entitled to the rental allowance for which he sues.
The plaintiff’s petition will be dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
In the above case (No. 49101) on motions of the several plaintiffs to dismiss the petitions therein, it was ordered June 5, 1951, that the said motions be allowed and the petitions of the several plaintiffs were dismissed as follows: Herbert A. Arronet, John F. Arfman, Wray B. Avera, Earl A. Butts, Frank G. Davis, George W. Durham, Albert R. Heckey, Osgood C. McIntyre, Nelson A. Myll, William L. Osborne, Raymond G. Sherman and Simpson R. Stribling.